## BOYKIN *vs.* KERNOCHAN.

1. A final decree of the Chancery Court, which has been fully executed, cannot be opened on the petition of one who, by his own showing, had no interest whatever in the subject-matter of the controversy until long after it was terminated.

2. When a party propounds his interest by petition to the court, praying to be made a party to a suit that he may prosecute an appeal or writ of error from the final decree, the order making him a party would relate back to the time when the decree was rendered ; and therefore, if his petition shows that an appeal or writ of error from the decree is already barred by the statute of limitations, it will not be granted. This rule applies equally to Chancery Courts and Courts of Probate.

3. The limitation prescribed to writs of error by the act of 1818 (Clay's Digest 309 § 17), applies to final decrees in chancery, as well as to final judgments at law.

APPEAL from the Chancery Court of Mobile.
Heard before the Hon. WADE KEYES.

THE appellant filed his petition on the 14th April, 1854, in the Mobile Chancery Court, setting out that on the ——— day

of ———, 1852, he intermarried with Sarah M. Hazzard, who had been a party to a suit in said court, in which Joseph Kernochan was complainant, and Robert F. Hazzard and Sarah M., his wife, and others, were defendants; that the object of the suit was to foreclose a mortgage on certain lands, the fee of which was in his wife; that during his marriage his wife had issue, born alive, capable of inheriting; that both the issue so born, and his wife, are now dead; that he is entitled to his curtesy, and prays to be made a party to the record in the former suit, that he may prosecute an appeal or writ of error from the decree, which he avers to be erroneous. Before either his marriage, or the filing of the petition, a final decree had been rendered in the mortgage suit, and that decree had been fully executed. Three years had also elapsed between the rendition of the decree and the filing of the petition.

The Chancellor dismissed the petition, and this appeal is prosecuted in order to review this order of dismissal.

JOHN T. TAYLOR, for the appellant, contended:

1. That the only question in the case, is, whether the petitioner has shown such an interest in the litigation, as warrants his being made a party; that the question as to the statute of limitations cannot arise, until after he has been made a party.

2. That the petition does show such an interest in Boykin, as entitles him to investigate the decree, the three years barring writs of error not having run against his wife before her death.—8 Ala. 177; 15 *ib.* 495.

3. That the act barring writs of error after the lapse of three years (Clay's Digest 309 § 17), applies only to judgments at law, and does not embrace decrees in chancery.

SMITH & CHANDLER, *contra :*

1. The appeal is limited to three years.—Mazange v. Slocum & Henderson, 23 Ala. 668.

2. If the petitioner were made a party, the order would relate back to the rendition of the decree, and he would be barred.—Binford v. Binford, 22 Ala. 682.

3. There are no exceptions in the statute, and none will be implied.—Howell v. Hair, 15 Ala. 194; 22 *ib.* 682. Nor has the petitioner been under any disability.

LIGON, J.—We see no error in this record, nor has the counsel for the appellant been able to produce a precedent for his petition. We are aware of no rule of chancery practice, which allows a final decree, once made, and fully executed, to be opened on the petition of one who, by his own showing, had no interest whatever in the subject-matter of the controversy until long after it was terminated. To introduce such a practice, would tend to unsettle the decrees of the Chancery Courts to an alarming extent,— to protract litigation, and foster speculations upon supposed errors in the proceedings of courts of justice. Before we could sanction a practice which is pregnant with such consequences, we would require the production of some well established rule to authorize it. We have not been shown such a rule, and have been unable, in our researches, either to find one, or to see a good reason why it should exist. Our statutes provide an ample remedy for defendants against whom decrees are rendered, when they are laboring under any disability.

But neither they, nor any of the books, furnish a rule by which those who are alike strangers in interest and strangers to the record can come in and disturb a decree final its character, and fully executed, because, in defiance of the record, they subsequently purchase the interest which one of the parties to the record formerly had in the subject-matter of the suit. If this party is permitted to come in at this time, what is to hinder him from selling out his pretended interest after the court decreed against him, and by this means conferring upon his purchaser the same right with regard to that decree which he now claims for himself with respect to the one already rendered? Thus the litigation might be kept up for an interminable period, and the rights of the parties and the decrees of court remain unsettled for an indefinite time ; and this, too, after the court, which had full jurisdiction of every interest and party involved, had, according to the known rules of both law and practice, finally pronounced sentence in the case.

2. The petitioner avers, in his petition, the purpose for which he desires to be made a party to the former suit, viz., that he may prosecute an appeal or writ of error, and thus have the decree reviewed. To this purpose he must be held.

The courts of justice in this State will never do a nugatory

act; and if the time, within which an appeal or writ of error from the decree rendered by the Chancellor could be prosecuted, had elapsed, before this petition was presented, then it would be a useless and nugatory act to grant its prayer.

We have already decided, that where one propounds his interest, and seeks to be made a party to the record in the Orphans' Court, and is so made, the order making him such will relate back to the time the decree was rendered; and if, in such case, the period intervening between the rendition of the decree and the time at which the new party is made, exceeds three years, he will not be allowed to prosecute a writ of error. —Binford v. Binford, 22 Ala. 682. The same rule, we apprehend, will apply with equal force to writs of error (under the old law), from decrees in chancery.

It was, however, insisted on in the argument, that the act of limitations, as it is found in Clay's Digest, 309 § 17, which declares, that "a writ of error may issue, to reverse any final judgment in the Circuit Court, at any time within three years after the rendition of the judgment, and not afterwards," does not apply to decrees in chancery; and consequently the right to prosecute a writ of error, in such cases, is unlimited as to time. We cannot assent to this construction of that statute. It was passed in the year 1818, when the chancery jurisdiction in this State belonged altogether to the Circuit Courts; and decrees pronounced by them may be well included under the term "judgments,', especially as these decrees, when made for the payment of money, are declared to have the force and effect of judgments, and are allowed to be executed by the same final process. It may well be doubted, whether any writ of error from a decree in chancery could be prosecuted at all, except under the authority of our statutes; and in this aspect of the case, the appellant's construction of the act of 1818 would wholly deprive him of the right to come here at all to complain of this decree. In England, such cases are invariably taken from the lower to the higher jurisdictions in equity by appeal, granted by the Chancellor; and our statutes, when the decree complained of in this record was made, required the order of the Chancellor, before an appeal could be taken; so that, if no writ of error were authorized by the statute, the decree of the Chancery Court would be final, on the adjournment of the term

at which it was pronounced, no appeal being prayed or granted during that term ; a result as fatal to the petitioner's application, as the statute, limiting the prosecution of writs of error to three years, could possibly be.

There was no error in the decree of the Chancellor dismissing the petition, and it is consequently affirmed, at the costs of the appellant, both in this court and the court below.